HOWARD and others *v.* THE MANHATTAN No. 12 and her Cargo.

SAME *v.* THE TWO BROTHERS and her Cargo.

(*District Court, D. Connecticut.* May 15, 1884.)

1. SALVAGE.

Where a tug incurs not the slightest danger, and very little trouble, in rescuing a barge that is in no immediate danger, and will be aided by some other boat, the compensation for salvage service should be as small as possible, but it must be more than would be allowed for mere towage service.

2. LIBEL—SALVAGE.

When an unemployed tug happened to meet a barge accidentally adrift in a harbor, and performed the common service of picking her up and towing her to a convenient wharf, *held,* that nothing like excessive compensation would be allowed as salvage, and that, the captain having rendered a bill indicating his and the tug-owner's estimate of the value of the service, a greater amount would not be allowed in a libel proceeding *in rem.*

In Admiralty.

*Alexander & Ash,* for libelants.

*Carpenter & Mosher,* for claimants.

SHIPMAN, J. These are two libels *in rem* by the owners, master, and crew of the N. S. Briggs, to recover salvage for services rendered at the same time to two barges owned by different persons. The two cases were tried at the same time, and the facts are as follows:

On September 13, 1883, the steam-tug James McMahon, having in tow the canal-boat Manhattan No. 12 on her starboard side, and the canal-boat Two Brothers, and the chunker L. C. & Nav. Co. 2104 on her port side, was proceeding through Hell Gate, bound east. When near what is marked on the chart as "Scaly Rock," on the Long island shore, and heading towards Ward's island the McMahon was run into by the iron steam-boat Cepheus, which came up astern. The force of the collision broke the tow loose from the tug. The tug-boat, in a sinking condition, proceeded to Port Morris. The Two Brothers and the chunker remained fastened together and drifted up in the channel. The Manhattan No. 12 drifted towards the Long island shore. The collision happened about 3:45 or 4 P. M. The day was fine, and there was a slight breeze from the west or south-west, and the tide was strong flood. At this time the libelants' tug N. S. Briggs was coming through the gate, bound for New York. She was returning after taking a bark to Whitestone, and had no tow. She first started to pick up the Two Brothers and the

chunker, which were drifting together up in the tide. But when her captain saw the position of the Manhattan No. 12 he altered his course and went towards her, because he judged that the other two boats would not come to harm before he got back, "if he was not too long." The Manhattan No. 12 by this time was close in shore. The shore was rocky, and she touched a rock once and injured herself somewhat. The Briggs backed her stern up to the Manhattan's bow, got a line out and worked her off until the Briggs could safely take the boat along-side, when she did so and made fast. The tug was skillfully managed by an experienced captain, and by careful handling succeeded in doing the work without damage to herself or to the barge. She then picked up the other two boats without difficulty, took them along-side, and went with the three boats to Port Morris, where they arrived about 4:30 P. M. The time occupied in the service was about three-quarters of an hour. If the Briggs had not picked up the Two Brothers she was in no danger of getting ashore before assistance would have been furnished.

The owners of the Briggs presented bills on September 14, 1883, for saving the three boats, to Daniel McWilliams, the owner of the James McMahon, whom at the time the owners of the Briggs supposed to be the owner of the three saved boats. The bills against the chunker and the Two Brothers were $50 each, and the bill against the Manhattan was $200. The owners of the Two Brothers and of the Manhattan had their office in the same building which Daniel McWilliams occupied. He did not tell the libelants, when the bills were presented, who the respective owners were, although he knew, but told the collector to see the iron-steam-boat company. The libels were brought on September 15th, in order to hold the cargoes. The value of the Two Brothers was $1,200, and the value of her cargo was $1,160. The value of the Manhattan was $2,600, and the value of her cargo was $1,350. Each barge was drifting without motive power, and was helpless. The service to each was a salvage service.

The Briggs incurred not the slightest danger and very little trouble in the service to the Two Brothers. She was in no immediate danger, and if the Briggs had not helped her, some other boat would have furnished the necessary aid. The compensation should be more than would be allowed for a mere towage service, but should be as small as possible for a salvage service. If no one had promptly gone to the relief of the Manhattan she would probably have drifted upon the rocks and would have been seriously damaged. An effort is made to show that the Briggs was in peril; that her engine was in danger of stopping or catching upon the center, and that she might have struck upon a rock. I do not think that she was, or that her captain considered himself to be in any danger which his good judgment could not avoid or overcome. The amount of the bill which was presented by one of the owners, and which was made out by the captain, indicated his and the owner's estimate at the time of the value of the service. The libelants now seek to recover $500. If the bill had been paid, I think that all claims both against barge and cargo would have been thereby paid in full. The amount named in the bill is allowed upon the ground that the Manhattan was close inshore when she was picked up. I do not think, when an unemployed tug happens to meet a barge accidentally adrift in or about the harbor of New York, and performs the common service of picking her up and tow-

ing her to a convenient wharf, that anything like excessive compensation should be allowed.

Let there be a decree in favor of the libelants against the Manhattan No. 12 and her cargo for the sum of $200 and costs, and a decree in favor of the libelants against the Two Brothers and her cargo for $25 and costs.

The owners, masters, and crew are all represented by one proctor, and I think that no apportionment of these sums need be made, because they will probably easily agree. If no agreement is reached, application for an apportionment may be made hereafter.